## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SUNSHINE THREE REAL ESTATE**
**CORPORATION,**                              Chapter 11
    Debtor                              Case No. 09-17821-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Relief from the Automatic Stay filed by Charles J. Housman, Trustee of Pine Banks Nominee Trust ("Pine Banks") with respect to property located at 140 Stearns Road, Ogunquit, Maine (the "property"). The Debtor, Sunshine Three Real Estate Corporation (the "Debtor"), filed an Opposition to the Motion. The Court heard the Motion filed by Pine Banks, the holder of a first mortgage on the property, and the Debtor's Opposition on September 14, 2009. The Court directed the parties to file briefs on a number of discrete legal issues, including 1) whether the equity of redemption with respect to the property remains outstanding; 2) whether the Rooker-Feldman doctrine deprives this Court of jurisdiction to consider claims against Pine Banks raised by Roberta A. Golden ("Golden"), the sole shareholder of the Debtor; 3) whether the Debtor has standing to assert claims based upon alleged substantive and procedural defects and irregularities with respect to the acquisition of a foreclosure judgment by Pine Banks, which claims Golden asserted as the former owner of the property; and 4) the effect of the

1

decision of the United States Court of Appeals for the First Circuit in <u>Grella v. Salem Five Cents Sav. Bank</u>, 42 F.3d 26 (1st Cir. 1994), on the claims asserted by Golden against Pine Banks.

## II. BACKGROUND

The material facts necessary to determine the Motion for Relief from the Automatic Stay are set forth in the pleadings, as well as exhibits attached to those pleadings. While Golden contested the entry of foreclosure judgments obtained by Pine Banks and Wallace Capital, LLC ("Wallace") in the Maine Superior Court based upon her assertion that an Allonge and Reinstatement Agreement (the "Allonge") was modified after its execution, neither she nor the Debtor have challenged the entry of those judgments or the decision of the Maine Supreme Judicial Court affirming those judgments. Moreover, the Debtor did not request an evidentiary hearing. Accordingly, for purposes of deciding the Motion for Relief from the Automatic Stay, the Court shall treat the Motion and Opposition as a contested matter to which the Federal Rules of Bankruptcy Procedure governing adversary proceedings apply, *see* Fed. R. Bankr. P. 9014(c), and in particular Fed. R. Bankr. P. 7056, which makes Fed. R. Civ. P. 56(c) ("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."), applicable to this contested matter. *See also* <u>Grella v. Salem Five Cents Sav. Bank</u>, 42 F.3d at 31 ("the hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick").

2

The Debtor filed a voluntary Chapter 11 petition on August 17, 2009, the same day Golden, an attorney, transferred the property to it for nominal consideration. The Debtor listed the property on Schedule A-Real Property with a value of $2,500,000.[1] The Debtor also listed a "Counterclaim" with a value of $2,500,000 against unidentified parties on Schedule B-Personal Property. On Schedule D-Creditors Holding Secured Claims, the Debtor listed Pine Banks and Wallace as secured creditors holding contingent, unliquidated and disputed claims of $1,200,000 and $600,000, respectively. The Debtor listed the Town of Ogunquit, Maine on Schedule E-Creditors Holding Unsecured Priority Claims with a claim in the amount of $8,500 for property taxes.

Golden and her husband, Peter A. Poulos, the president of the Debtor, have owned the property through various entities for approximately twenty years. Golden intended the property, which has an unobstructed view of the Atlantic Ocean and the Marginal Way in Ogunquit, Maine, to be her retirement home. To effectuate her plan, she personally borrowed money from Pine Banks to build a large home. On November 24, 2004, she executed a promissory note for a construction loan in the amount of $1,050,000, and granted Pine Banks a mortgage on the property. Under the terms of the note, which provided for interest at an annual rate of 14%, Golden received an initial advance of $550,000. Interest only was payable beginning on June 29, 2005, with the entire balance due

---

[1] The Debtor did not file the Declaration Concerning Schedules with its Schedules A through H. That Declaration required the Debtor through the officer or authorized agent of the corporate debtor to declare under penalty of perjury that the Schedules were true and correct to the best of his or her knowledge, information, and belief.

before November 29, 2005. On November 24, 2004, Golden also executed a Construction

Holdback Agreement.  The note expressly provided, in bold type, that it was a contract for

a short-term loan and that the obligation was commercial in nature and, thus, was exempt

from the Federal Truth in Lending Act and Regulation Z. *See generally* 15 U.S.C. §§ 1601 et

seq.

Golden encountered difficulties in constructing the home at 140 Stearns Road.

According to Golden, the original contractor breached his obligations under the

construction contract and, in addition, abutters challenged the issuance of the building

permit by the Town of Ogunquit.  Because of defaults under the Pine Banks note, on

January 17, 2006, Golden executed a note and mortgage in favor of Wallace.  That note was

in the original principal amount of $600,000 and required the payment of 10 points.  It also

required the payment of monthly interest.  The entire principal balance was due on

September 17, 2006.

Golden defaulted on her obligations under both notes, and, on March 23, 2006, Pine

Banks and Wallace filed a Complaint for Foreclosure in the York County Maine Superior

Court.  Golden answered the Complaint and asserted twenty affirmative defenses, as well

as six counterclaims, including breach of contract; breach of the implied covenant of good

faith and fair dealing; failure to comply with the loan documents and change in course of

dealings; fraud, deceit and misrepresentation; "violation of Me. Rev. St. Ann. tit. V., ch. 10

and violation of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)" [sic]; and violation

of Mass. Gen. Laws, ch. 93A, §§ 2 and 11.  Although the Superior Court denied the Motion

4

for Summary Judgment filed by Pine Banks and Wallace on February 7, 2007, the parties

eventually executed the Allonge on July 31, 2007.

The Allonge provided that Golden would pay $50,000 upon its execution for

reinstatement of both loans with the funds to be applied to accrued interest under the Pine

Banks note. Additionally, the parties agreed to the modification of Golden's obligations

to Pine Banks and Wallace as follows:

> 1) The extension of the maturity date for both obligations to August 1, 2008
> with no required monthly payments;
>
> 2) A reduction in the interest rate on the Wallace note to 12%, retroactive to
> the closing on January 17, 2006;
>
> 3) Disbursement by Wallace of the remaining balance of the construction loan
> in the amount of $405,152.30 in accordance with a disbursement schedule
> agreed to among the parties and the advance of funds for the payment of all
> delinquent real estate taxes;
>
> 4) Golden's agreement to pay increased costs above those set forth in the
> disbursement schedule from her own funds within a period of 30 days after
> any individual disbursements;
>
> 5) The waiver by Pine Banks and Wallace of any default interest and late fees
> accrued to date;
>
> 6) Substantial completion of construction by February 1, 2008; and
>
> 7) Golden's agreement to be responsible for attorneys' fees and costs in the
> aggregate amount of $18,000, which were to be collected upon the maturity
> of the obligations without interest and without prejudice to the collection of
> additional fees for any future defaults.

Golden also acknowledged that, as of July 30, 2007, she owed Pine Banks $987,634,66 in

principal and interest and Wallace $271,762.69 in principal and accrued interest.

Additionally, she acknowledged and confirmed "the validity and enforcement of the

underlying Notes and Mortgages with Pine Banks and Wallace." Finally, Golden agreed

to the following:

> a stipulation and Judgment and dismissal of he [sic] counterclaims in the Superior Court, which shall be held in escrow, and not be filed until August 1, 2008, or sooner if the loan is paid in full, which judgment shall acknowledge that Golden has defaulted on the obligations, but there shall be no judgment of Foreclosure entered. The Judgment shall also provide that a Judgment for Foreclosure shall be entered by the Court in the future, if there are any further defaults by Golden in the loan obligations, and in the performance of this Agreement. The Court would accept an affidavit as evidence of any default, and the Plaintiff would provide a copy to Golden's attorney upon filing. [sic] Golden would have 14 days from the date of the filing of the affidavit to object. After the filing of an objection, the Court would have the discretion to either enter the Judgment of Foreclosure, or conduct a hearing on the alleged default on the next available trial date. [sic] A default as defined herein shall be the failure of Golden to perform any of the following terms:

>> a. Have the construction substantially completed on or before February 1, 2008.
>> b. Pay off the underlying obligation on or before August 1, 2008.
>> c. Pay the difference for any increased costs beyond the disbursement schedule out of her own funds within a period of 30 days after any of the individual disbursement. [sic]
>> d. Maintain adequate homeowners insurance on the property.

In mid-July or early August, 2008, Pine Banks and Wallace, sought entry of

Judgments of Foreclosure in the Maine Superior Court pursuant to the terms of Allonge.

Golden filed five affidavits in opposition to affidavits filed by counsel to Pine Banks and

Wallace, Alan E. Shepard, Esq. and Steven Ross, Esq. In the cover letter to her first

affidavit, Golden requested a hearing before Superior Court Judge Brennan, opposing the

requests of Pine Banks and Wallace for the entry of judgments without a hearing. In her

affidavit, dated July 10, 2008, which she attached to her August 7, 2008 cover letter, she

asserted that "there was a modification of the Allonge and Reinstatement Agreement" and that she was not in default under the terms of the Allonge, stating that she had made the $50,000 payment, achieved "substantial completion," of construction and obtained a certificate of occupancy as of June 25, 2008.  In a cover letter to the Superior Court, dated August 18, 2008, to which she attached a supplemental affidavit, Golden again requested a hearing and reiterated her belief that the Allonge had been "modified by the parties shortly after it was signed."  Golden transmitted a third affidavit to the Superior Court on August 25, 2008.  In her cover letter, she noted that Judge Brennan intended to conduct a hearing on August 26, 2008.  Golden submitted two additional affidavits after the August 26, 2008 hearing.  In an affidavit dated September 3, 2008, she objected to the amount of the judgments sought by Pine Banks and Wallace and requested an evidentiary hearing.  She reiterated those objections in her final affidavit dated September 4, 2008.

Rejecting the arguments advanced by Golden, the Superior Court entered judgments in favor of Pine Banks and Wallace on or around September 15, 2008 in the amounts of $1,070,101.40 and $735,005.85, excluding per diem interest accruing at the rates of $424.89 and $213.57, respectively.[2]    Golden appealed.  On May 12, 2009, the Maine Supreme Judicial Court affirmed, stating the following:

> Contrary to Golden's contentions, the court did not violate her right of due process when it entered the judgments of foreclosure without first conducting an evidentiary hearing on her allegation that an allonge

[2] Accrued interest through the petition date equals approximately $213,000 on both notes.  Therefore, the total debt, excluding any outstanding real estate taxes, equals approximately $2,018,000.

agreement, entered into in settlement of the claims, had been modified. Golden acknowledged in the allonge agreement that she had defaulted on the promissory notes. She also agreed that a judgment of foreclosure could be entered upon any further defaults. Golden defaulted by failing to pay the underlying obligations by the date set forth in the allonge agreement. The agreement further provided that the court could accept an affidavit as evidence of any default and would have the discretion either to enter a judgment of foreclosure or to conduct a hearing. The allonge agreement is a binding contract in settlement of defaults. By entering into the allonge agreement, Golden waived any due process argument on this issue, as to either the defaults or the amounts owed.

Housman v. Golden, No. Yor-08-559, Slip op. at 1-2 (May 12, 2009) (citations omitted).

Golden moved for reconsideration of the decision of the Maine Supreme Judicial Court. It denied her motion on June 12, 2009. Golden attempted to appeal the decision of the Maine Supreme Judicial Court to the United States Supreme Court.

Pine Banks submitted a letter dated September 14, 2009 from the Clerk of the Supreme Court of the United States referencing Goldman v. Housman, in which the Clerk stated:

The application for an extension of time within which to file a petition for a writ of certiorari in the above entitled case was sent by commercial carrier September 9, 2009 and received on September 11, 2009. The papers are returned for the following reason(s):

The lower court opinion must be appended. Rule 13.15.

It is impossible to determine the timeliness of your application for an extension of time without the lower court opinions.

(emphasis supplied). From that letter, it appeared that Golden failed to properly appeal the May 12, 2009 decision of the Maine Supreme Judicial Court and that there was no appeal pending at the commencement of the Debtor's case on August 17, 2009.

Pine Banks, in a Reply to the Debtor's brief, cited Supreme Court Rule 13 with respect to the deadline for filing petitions for a writ of certiorari to the Supreme Court and set forth a timeline of pleadings filed by Golden in the Maine Supreme Judicial Court and the United States Supreme Court.  Supreme Court Rule 13.3 provides:

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

Sup. Ct. R. 13.3.  Rule 13.5 further provides for an extension of time, "[f]or good cause," if the application is filed with the Clerk at least 10 days before the date the petition was due. Sup. Ct. R. 13.5.  Thus, at least in theory, the petition was due on September 10, 2009, and the application for an extension was due on August 31, 2009.  In his letter of September 14, 2009, the Clerk of the Supreme Court of the United States noted that Golden's application for an extension was received on September 11, 2009.  Thus, at first blush, the application for an extension of time to file a petition for writ of certiorari was  untimely.

The Debtor also submitted an order, dated August 18, 2009, issued by the Maine Superior Court denying Golden's "Motions for Stay and/or Extend Redemption Period and for Stay of Writ of Possession or Temporary Injunctive Relief," which order entered over 90 days after the Supreme Judicial Court decision and a day after the commencement of the Debtor's bankruptcy case. The order of the Maine Superior Court suggests that

9

Golden failed to successfully appeal to the United States Supreme Court and that a

mandate issued by the Maine Supreme Judicial Court, conferring jurisdiction on the Maine

Superior Court to dispose of those motions.

The Debtor, like Pine Banks, filed a Reply Memorandum in which it contended that

Golden timely filed an application for an extension of time within which to file a petition

for writ of certiorari.  It attached to its  Reply Memorandum a letter to the Clerk of the

Supreme Court from Golden in which she attached "Petitioner's Second Application for

Extension of Time in Which to File Petition for Writ of Certiorari (Signed Copy of original

Petition sent on September 9, 2009)" and a "Copy of Tracking Order Receipt for Federal

Express which indicates Original Application was received by Court on September 10, 2009

and signed for by W. Lee not on September 11, 2009 as noted in Clerk's letter of September

14, 2009."

> Supreme Court Rule 29 provides in relevant part the following:
>
> A document is timely filed if it is received by the Clerk within the time
> specified for filing; or if it is sent to the Clerk through the United States
> Postal Service by first-class mail (including express or priority mail), postage
> prepaid, and bears a postmark, other than a commercial postage meter label,
> showing that the document was mailed on or before the last day for filing;
> or if it is delivered on or before the last day for filing to a third-party
> commercial carrier for delivery to the Clerk within 3 calendar days.

Sup. Ct. R. 29.2.[3]

---

[3] Though not attached to the Reply Memorandum, the public record of the
Supreme Court of the United States of which this Court takes judicial notice reflects a
docket entry for September 9, 2009 of an "Application (09A293) to extend the time to file
a petition for a writ of certiorari from September 10, 2009 to November 9, 2009, which
was submitted to Justice Breyer," as well as a docket entry for September 25, 2009,

In addition to addressing the issue of the pendency of an appeal in its Reply Brief, the Debtor also attached a notarized "Assignment of Rights," dated September 24, 2009. The Assignment provides:

> I, Roberta A. Golden, of Framingham, Middlesex County, Massachusetts, hereby fully transfer and assign all my right, title and interest in any and all actions and choses-in-action [sic] in law, equity or otherwise, now standing in my name, or as I may otherwise have, whether brought by me, involving Pine Banks Nominee Trust, Wallace Capital Corporation [sic] and or [sic] Steven Ross, arising from my former ownership of realty in Ogunquit, York County, in the State of Maine, located at 140 Stearns Road, to Sunshine Three Real Estate Corporation of said Framingham.

In addition to the parties submissions and references to Supreme Court rules, both Pine Banks and the Debtor attached appraisals to their respective filings with this Court. Pine Banks submitted an appraisal, dated August 24, 2009, prepared by G. Andrew Clear of The Stanhope Group, LLC, in which he expressed the opinion that the property had a fair market value of $1,600,000 at the time of his appraisal.  Mr. Clear observed that "[t]he subject was re-listed 1/30/2008 $2,200,000 [sic] as completed and has been on and off the market for a total of 576 days per the broker." The Debtor submitted an appraisal prepared by Kendra Cole in February of 2005 in which the property was valued at $2,100,000. It also submitted the  opinion of a licensed real estate broker, Rick Cosseboom, who advocated listing the property for sale at a price of  $2,200,000.  The appraisals are discussed in more detail at the conclusion of this decision.

––––––––––––––––––––

reflecting an order entered by Justice Breyer granting the Application and extending the time to file the petition for a writ of certiorari until November 9, 2009.

## III. DISCUSSION

### A. Positions of the Parties

Pine Banks seeks relief from the automatic stay under both 11 U.S.C. § 362(d)(1) and (d)(2).  With respect to "cause" for relief from the automatic stay under section 362(d)(1), Pine Banks argues that Golden's equity of redemption expired on August 10, 2009, both before she conveyed the property to the Debtor and before the Debtor commenced its Chapter 11 case.  Additionally, it argues that the Rooker-Feldman doctrine deprives this Court of jurisdiction to consider any claims against Pine Banks that Golden may have transferred to the Debtor, including Golden's claim that the Allonge was modified.  It adds that the Debtor lacks standing to assert Golden's state court claims in opposition to its Motion for Relief from the Automatic Stay because it has no contractual relationships with Pine Banks or Wallace, particularly because the Debtor did not exist until shortly before the commencement of the Chapter 11 case when it was incorporated.  Finally, it argues that the Court cannot adjudicate any of Golden's potential claims against Pine Banks, assuming the existence of an assignment of those claims to the Debtor in the context of a motion for relief from the automatic stay based upon the First Circuit's decision in Grella v. Salem Five Cents Sav. Bank, 42 F.3d at 31-32.

With respect to relief from stay under section 362(d)(2), Pine Banks submitted a recent appraisal in support of its position that there is no equity in the property.  According to its appraiser, as noted above, the property is worth, not $2,500,000 as set forth on the Debtor's Schedule A, but $1,600,000, subject to encumbrances of over $2,000,000.

12

The Debtor disputes Pine Bank's valuation of the property and submitted a broker's opinion that the listing price for the property should be $2,200,000. The Debtor also submitted an appraisal report that was prepared in 2005.

With respect to the issue of whether the equity of redemption expired prepetition, the Debtor argues that the appeal period remains in effect. It states:

> A Motion for Stay of Issuance of the Mandate was filed on May 26, 2009 pending the decision of the Law Court on the Motion for Reconsideration and pending the outcome of the Petition for a Writ of Certiorari to be filed in the United States Supreme Court. No opposition was filed to the Motion for Stay of the Issuance of the Mandate in the Law Court by the Plaintiff. The period of time in which to file an Opposition to the Motion to Stay the Issuance of the Mandate elapsed on June 2, 2009 pursuant to Maine Rules of Appellate Procedure 10(a) and (c). The Law Court never issued a decision on the Motion to Stay.

The Debtor adds that "[t]he Defendant is in good faith filing a petition for a Writ of Certiorari in the United States Supreme Court which was due to be filed within 90 days after the issuance of the mandate by September 10, 2009, which is 90 days after the denial of the Motion for Reconsideration or with the enlargement of the time requested which is November 10, 2009."[4] The Debtor also argues that the appeal period is still in effect, subject to a decision from the United States Supreme Court. Continuing its confusing arguments, including repeated references to the conveyance of the property to the Debtor on August 10, 2009, not August 17, 2009,[5] the Debtor states that "the  expiration of the period of

---

[4] *See* footnote 2, *supra*.

[5] Golden used the August 10, 2009 date in her affidavit filed with this Court in conjunction with the Debtor's Opposition to the Motion for Relief from Stay. Thus, the Debtor's argument, unsupported by any documentation, that "[t]he period of

redemption, at the earliest, would have been August 18, 2009, when the Maine Court

entered its' [sic] order regarding the period of redemption."

    B. <u>Applicable Law</u>

Section 362(d) of the Bankruptcy Code provides in relevant part the following:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
>>
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. § 362(d).  Section 362(g) allocates the burden of proof:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section–
>
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>>
>> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).  As noted above, the First Circuit in <u>Grella</u> examined the scope of

---

redemption did not end on August 10, 2009, but on September 10, 2009" and that "[e]ven if it is considered to have expired as of August 11, 2009, the property was transferred to Sunshine on August 10, 2009" must be rejected because the facts upon which they are based are inaccurate.

proceedings under section 362(d).  It observed:

> The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate.

> These courts' interpretation of § 362 also comports with the statute's legislative history:

>> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim.

> H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, at 6300 (emphasis added). . . .

> The relief from stay procedures established by the Bankruptcy Rules also point to the limited scope of the hearing. Relief from the stay is obtained by a simple motion, Fed.R.Bankr.P. 4001, and it is a "contested matter," rather than an adversary proceeding. Fed. R. Bankr. P. 9014. . . .  In contrast, all actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be litigated in adversary proceedings. Fed. R. Bankr. P. 7001. To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit . . . and would be inconsistent with this procedural scheme.

Grella, 42 F.3d at 32-33 (citations omitted).

    C. Analysis

15

The limited scope of a relief from stay proceeding informs this Court's decision. Pine Banks was required to establish a colorable claim for relief under section 362(d). The Court finds that it did so.

### 1. The Equity of Redemption

With respect to relief from stay under section 362(d)(1), resolution of whether Golden's equity of redemption expired before she transferred the property to the Debtor immediately prior to the commencement of the case, or thereafter, depends upon whether an appeal is pending. Maine foreclosure law provides the following:

> After hearing, the court shall determine whether there has been a breach of condition in the plaintiff's mortgage, the amount due thereon, including reasonable attorney's fees and court costs, the order of priority and those amounts, if any, that may be due to other parties that may appear and whether any public utility easements held by a party in interest survive the proceedings. . . .

> If the court determines that such a breach exists, a judgment of foreclosure and sale shall issue providing that if the mortgagor, his successors, heirs and assigns do not pay the sum that the court adjudges to be due and payable, with interest within the period of redemption, the mortgagee shall proceed with a sale as provided. If the mortgagor, his successors, heirs and assigns pay to the mortgagee the sum that the court adjudges to be due and payable to the mortgagee with interest within the period of redemption, then the mortgagee shall forthwith discharge the mortgage and file a dismissal of the action for foreclosure with the clerk of the court.

> . . . On mortgages executed on or after October 1, 1975, the period of redemption shall be 90 days from the date of the judgment. *In either case, the redemption period shall begin to run upon entry of the judgment of foreclosure, provided that no appeal is taken.*

16

Me. Rev. Stat. Ann. tit. 14, § 6322 (emphasis supplied).[6]  Under Maine law, "a mortgage on real property is a conditional conveyance with legal title vested in the mortgagee." <u>Duprey v. Eagle Lake Water and Sewer Dist.</u>, 615 A.2d 600, 602 (Me. 1992) (citing <u>In re Roberts</u>, 26 BR. 397 (Bankr. D. Me.1983)).  According to the Supreme Judicial Court,

> The mortgagor retains only the right to possess the premises and the equity right of redemption. <u>Martel v. Bearce</u>, 311 A.2d 540, 543 (Me.1973). . . . An equity of redemption comes within the scope of "all legal or equitable interests of the debtor in property" and as such becomes property of the estate. Collier, *supra*, at ¶ 541.07[3]. The redemption right was properly included as property of the estate. *See* <u>Johnson v. First Nat'l Bank of Montevideo</u>, 719 F.2d 270, 276 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) ("[I]t is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time of [sic] the bankruptcy petition is filed.").

<u>Duprey</u>, 615 A.2d at 602.  *See also* <u>JPMorgan Chase Bank. v. McKinney (In re McKinney)</u>, 344 BR. 1, 6-7  (Bankr. D. Me. 2006); <u>Schinck v. Stephens (In re Stephens)</u>, 221 BR. 290, 293 n. 4 (Bankr. D. Me. 1998), <u>In re Simcock</u>, 152 BR. 7, 9 (Bankr. D. Me. 1993).  Citing <u>United States v. Thom, Inc. (In re Thom, Inc.)</u>, 95 BR. 261, 265 (Bankr. D. Me. 1989), the court in <u>Duprey</u> concluded that neither the automatic stay nor the provisions of section 108(b) stayed the running of the statutory redemption period.[7]  Moreover, it determined that

---

[6] Generally, state law defines the property rights that are included within the bankruptcy estate. *See* <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).  Because the property is located in Maine, Maine law applies.  Neither party has argued otherwise.

[7] This Court disagrees.  Section 108(b) would appear to apply in this case, assuming the Debtor is not substituted for Golden with respect to the perfection of an appeal to the Supreme Court of the United States.  It provides the following:

> When that equity of redemption has been lost by the expiration of the statutory period, nothing remains in the mortgagor except the contingency that exceptional circumstances may exist which will entitle him to equitable relief. His legal title was conveyed when he executed the mortgage and his equitable title disappeared with the expiration of the period of redemption.

Duprey, 615 A.2d at 604 (citing Smith v. Varney, 309 A.2d 229 (Me. 1973)).

Thus, the issue of whether Golden's equity of redemption expired before August 17, 2009 when she transferred the property to the Debtor and the Debtor filed its Chapter 11 case turns on whether there is a valid appeal from the May 12, 2009 decision of the Maine Supreme Judicial Court. Subsidiary issues include whether the Debtor succeeded to or obtained the equity of redemption on August 17, 2009 when Golden deeded the property to it or at some later time; and whether, if the Debtor obtained the equity of redemption by deed on August 17, 2009, Golden's postpetition extension of time within which to file a petition for a writ of certiorari inures to the Debtor's benefit for purposes of Me. Rev. Stat. Ann. tit. 14, § 6322.

The Court concludes that Golden's equity of redemption would have expired on September 10, 2009, ninety days after the Supreme Judicial Court denied her Motion for Reconsideration on June 12, 2009, absent the filing of an appeal in accordance with Me. Rev. Stat. Ann. tit. 14 § 6322. The decision of Justice Breyer in granting Golden an extension of time within which to file a petition for a writ of certiorari, is not *per se* the equivalent of the actual filing of a petition for a writ of certiorari, however, and the Debtor did not submit any authority from which this Court could determine conclusively whether

it had the effect of preventing the expiration of the equity of redemption under Me. Rev. Sta. Ann. tit. 14, § 6322.

Assuming the equity of redemption did not expire as a result of the extension of time granted Golden to file a petition for writ of certiorari, "[t]he equity of redemption is a distinct estate from that which is vested in the mortgagee before or after condition broken . . . [and] . . . is descendible, devisable, and alienable like other interests in real property." Clark v. Reyburn, 75 U.S. 318, 321-22 (1868) (footnote omitted). *See* Frisbee v. Frisbee, 86 Me. 444, 29 A. 1115 (1894) ("one who has an interest in the premises and would be a loser by foreclosure, is entitled to redeem."). *See generally* Herbert T. Tiffany and Basil Jones, Tiffany Real Property, § 1497 (1939). The parties did not address whether the equity of redemption was transferred by deed on August 17, 2009 or whether a separate writing was required to transfer it in view of Wallace's second mortgage secured by the equity of redemption.

Neither Pine Banks nor the Debtor specifically addressed the issue of the second mortgage to Wallace and how it might affect the Debtor's ability to redeem the property from Pine Banks. In Smith v. Varney, 309 A.2d 229 (1973), the court addressed the ramifications of a second mortgage. It stated:

> In ordinary cases the mortgagor conveys to the mortgagee the title to real estate as security for a debt. There remains in the mortgagor the right to pay the debt, and thereby redeem the property mortgaged. The process of foreclosure cuts off this right, and vests the title absolutely in the mortgagee. *The same thing is true of a second mortgage, which is but a mortgage of the equity of redemption. The whole equity is conveyed to the mortgagee, the same as the whole title is conveyed to the first mortgagee.* The right remaining in the mortgagor is a right to redeem the equity of redemption. That right carries with it, as an

> incident to it, a right to redeem the first mortgage. Now when the second
> mortgagee forecloses the mortgagor, the whole equity of redemption vests
> in him, precisely as the whole estate vests in the first mortgagee after
> foreclosure, and he alone is entitled to redeem the first mortgage. The
> incidental right of redeeming the first mortgage goes with the thing to which
> it was an incident the right to redeem the second mortgage.

Id. at 232 (citing Colwell v. Warner, 36 Conn. 224, 234 (1869)).

The Court need not resolve the issue of the equity of redemption in the context of

the instant motion.  It is sufficient to note that while the equity of redemption may not have

been curtailed by operation of law because of the extension of time within which to file a

petition for writ of certiorari granted to Golden, the status of the equity of redemption and

the Debtor's right to redeem the Pine Bank's mortgage remain subject to numerous

substantive and procedural challenges.[8]

    2. The Rooker-Feldman doctrine

Both parties addressed the Rooker-Feldman doctrine in their briefs.    The

---

[8] In KeyBank Nat. Ass'n v. Sargent, 758 A.2d 528 (Me. 2000), the court observed
that "the 'right of redemption, once extinguished, cannot be revived by any court, nor
can the period of redemption be abridged or enlarged by operation of law,'" Id. at 532
(citing Smith v. Varney, 309 A.2d 229, 232 (Me.1973)).  The court added:

> KeyBank has argued that allowing Rule 60(b) relief after the expiration of
> 90-day redemption period is impermissible, as it operates to revive and
> extend the redemption period. There are exceptional circumstances,
> however, where a court of equity may provide relief, even after the 90-day
> redemption period has expired. See Smith v. Varney, 309 A.2d at 232. Rule
> 60(b) itself provides that equity may be invoked to provide relief from
> judgment in certain circumstances, and section 6322 does not preclude
> such relief.

Id. (footnote omitted).

Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." In re Sanders, 408 BR. 25, 33 (Bankr. E.D.N.Y. 2009) (citing Book v. Mortgage Elec. Registration Systems, 608 F.Supp.2d 277, 288 (D. Conn. 2009) and Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).  The Court finds that, to the extent the Debtor purports to challenge the validity of the foreclosure judgment based upon modification of the Allonge, this Court lacks jurisdiction to adjudicate the merits of those claims.  To the extent the Debtor is merely defending the Motion for Relief from Stay under section 362(d)(2) on the grounds that equity in the property exists and the property is necessary for an effective reorganization, the Rooker-Feldman doctrine is inapplicable.

As the Supreme Court noted in Exxon Mobile, however, preclusion is not a jurisdictional matter.  See 544 U.S. 293.  Accordingly, res judicata can be invoked to preclude the modification of the Allonge as a basis to challenge the judgments of the Superior Court which established the amounts due and owing Pine Banks and Wallace, namely $1,07010.40 and $735,005.85, excluding per diem interest accruing at the rates of $424.89 and $213.57 to Pine Banks and Wallace, respectively.  In other words, res judicata or claim preclusion could prevent relitigation of issues relating to the underlying loans and the Allonge as a defense to the Motion for Relief from Stay.

21

In Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240 (B.A.P. 1st Cir. 2008), the

United States Bankruptcy Appellate Panel for the First Circuit explained the parameters

of claim preclusion.  It stated:

> The doctrine of res judicata prohibits all parties and their privies from
> relitigating issues which were raised or could have been raised in a previous
> action, once a court has entered a final judgment on the merits in the
> previous action. See FDIC v. Shearson-Amer. Express, Inc., 996 F.2d 493, 497
> (1st Cir.1993) (citations omitted). The res judicata doctrine is generally used
> to refer to claim preclusion. See Grella v. Salem Five Cent Sav. Bank, 42 F.3d
> 26, 30-31 (1st Cir.1994) (citing Dennis v. Rhode Island Hosp. Trust Nat'l Bank,
> 744 F.2d 893, 898 (1st Cir.1984)). The essential elements of res judicata are: (1)
> a final judgment on the merits in an earlier action; (2) an identity of parties
> or privies in the two suits; and (3) an identity of the cause of action in both
> suits. Id. (citing Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st
> Cir.1992)). Once these elements are established, the parties are barred not
> only from relitigating previously disputed matters, but also from introducing
> any related matters that could have been offered in the original action. See id.
> (citing Dennis, 744 F.2d at 898).

Schwartz, 409 B.R. at 249.  See also Dall v. Goulet, 817 F.Supp. 518, 521 (D. Me. 1994)

("Under Maine law, prior to applying the doctrine of res judicata, "the court must satisfy

itself that 1) the same parties, or their privies are involved; 2) a valid final judgment was

entered in the prior action; and 3) the matters presented for decision were, or might have

been, litigated in the prior action.").

The essential elements for application of res judicata appear to be present here, but

neither Pine Banks nor the Debtor addressed them in their briefs.  In this contested matter,

as in the Maine Superior Court, Pine Banks is seeking to foreclose its mortgage.  Pine

Banks, as well as Wallace, obtained foreclosure judgments from that court which were

affirmed by the Maine Supreme Judicial Court. Although the decision of the Maine

Supreme Judicial Court may not be final until such time as a petition for writ of certiorari

is denied by the Supreme Court, the Debtor did not join or moved to be substituted for

Golden in seeking relief from that court.  Accordingly, for purposes of res judicata, it is at

least arguable that the foreclosure judgments are final as to it. *See* 11 U.S.C. § 1111(b)(1)(A)

("A claim secured by a lien on property of the estate shall be allowed or disallowed under

section 502 of this title the same as if the holder of such claim had recourse against the

debtor on account of such claim, whether or not such holder has such recourse . . . .").

The only other potential issue is whether there is an identity of parties in the two

suits.  The Debtor answered that question in its memorandum when it stated the following:

> Title to the property was taken by Sunshine Three Real Estate Corporation,
> a real estate holding corporation, with Peter A. Poulos as President.  Peter
> Poulos is former owner and Trustee of an entity which owned the property
> in the past.  He is also the husband of Roberta Golden.  Golden had
> transferred the property to Sunshine, which was established to take title to
> the property and to become a Chapter 11 debtor in the event that the Pine
> Banks/Wallace/Ross foreclosure could not be enjoined.  This was the only
> means by which Roberta Golden could protect and preserve her multi-
> million dollar investment in the property and could avoid having the value
> of the property radically diminished through foreclosure by Pine Banks - a
> notorious "hard money" lender.

Under Maine law, "if a corporation is closely held, then the judgment in the shareholder's

action is conclusive on the corporation except when relitigation is necessary to protect the

interest of another owner or a creditor of the corporation.  *See* Spickler v. Dube, 644 A.2d

465, 468 (Me. 1994) (citing Red Carpet Corp. of Panama City Beach v. Roberts, 443 So.2d

377, 380 (Fla. App.1983) (closely held corporation barred from bringing abuse of process

action against former law firm when owners had previously filed and lost on counterclaims

23

on same issues). Thus, this Court finds that the Debtor is in privity with Golden, its sole

shareholder, for purposes of claim preclusion. The Debtor is not in a position at this

juncture to challenge the judgments of the Maine Superior Court which established the

amounts due and owing Pine Banks and Wallace based on Golden's argument that the

Allonge was modified.

### 3. Relief from Stay under Section 362(d)

Turning to Pine Banks' claim for relief under section 362(d)(2) and assuming,

*arguendo*, that the Debtor established that it holds a right of redemption and an interest in

the property for purposes of 11 U.S.C. § 541(a), the Court finds that the Debtor failed to

rebut the evidence submitted by Pine Banks that it has no equity in the property. Pine

Banks submitted more compelling evidence in the form of a recent appraisal by a licensed

appraiser as to the value of the property. The Debtor's evidence consisted of an outdated

appraisal and a broker's opinion of a listing price, neither of which were persuasive

evidence of the current fair market value. Pine Banks' appraiser valued the property at

$1,600,000. The amounts due Pine Banks and Wallace, approximately $2,018,000, exceed

Pine Bank's valuation by $400,000, excluding the accrual of additional charges and real

estate tax liens.[9] While the Debtor criticized Pine Banks' valuation, relying upon an

outdated appraisal and the statement that it intended to obtain a new appraisal "as soon

---

[9] Equity is the difference between the value of the property and the total amount
of all secured claims and encumbrances, not just the difference between the value of the
property and the secured claim of the party seeking relief from the automatic stay. *See*
First Agricultural Bank v. Jug End of the Berkshires, Inc. (In re Jug End of the
Berkshires, Inc.), 46 B.R. 892, 901 (Bankr. D. Mass. 1985).

as possible," it failed to submit a recent appraisal, even after the matter was taken under advisement. The Debtor's valuation of the property is speculative, particularly in view of the comparable sale of a property located at 132 Stearns Road considered by the appraiser engaged by Pine Banks. Although that property is smaller, the appraiser accounted for the smaller size and inferior material. Notably, that comparable sale property was on the market for 510 days before it was sold. Accordingly, the Court finds that a *listing price* of $2,200,000, which exceeds even the appraised value of the property in 2005, the evidence of value asserted by the Debtor, is not likely to result in an offer equal to that amount, particularly in view of the time of year, the property's prior listing for that amount in January of 2008, and the property's presence on and off the real estate market for almost two years. Thus, the Court finds that Pine Banks satisfied its burden under section 362(g)(1).

Having established that the Debtor lacks equity in the property, the Debtor was required to offer credible evidence that a reorganization is in prospect. *See* United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365 (1988). In that case, the Supreme Court articulated the Debtor's burden:

> [I]t is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." *See* § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." . . . .

Id. at 375-76 (citation omitted). At the hearing conducted on September 14, 2009, counsel

25

to the Debtor indicated that the Debtor planned to sell the property, but Golden has attempted to sell the property in the past and has been unsuccessful.  The Debtor, through its counsel, averred that written offers to acquire the property were expected and that the property can be rented on a monthly basis.  Nevertheless, the Debtor failed to submit any copies of written offers or leases, failed to submit a recent appraisal despite representations to that effect, and failed to outline the terms of a Chapter 11 plan of reorganization. Specifically, the Debtor failed to apprise the Court of its strategy for untangling the legal web ensnaring the equity of redemption, and most importantly, the Debtor did not mention, let alone, outline the terms of a plan of reorganization and how potential deficiency claims or unsecured claims of Pine Banks and Wallace would be addressed over their objections.  While the Debtor stated that a plan of reorganization was in prospect, its statement was conclusory and devoid of detail required to enable this Court to determine that it satisfied its burden under section 362(g) with respect to <u>Timbers</u>, namely to demonstrate "a reasonable possibility of a successful reorganization within a reasonable time."  The Debtor failed to proffer the terms of a plan of reorganization that is in prospect and simply indicated its intention to sell the property, a plan that is speculative and conjectural based on Golden's inability to sell the property for the past year.  Moreover, it did not address how it would respond to any objections by Pine Banks and Wallace predicated upon such a sale.[10]

---

[10] The Court notes that the Debtor commenced an adversary proceeding on October 16, 2009, over one month after the Court took the Motion for Relief from Stay under advisement.  The Debtor's complaint names Pine Banks, Wallace and Steven

**IV. CONCLUSION**

In view of the foregoing, the Court finds that Pine Banks has established a colorable claim to relief under 11 U.S.C. § 362(d)(2).  Accordingly, the Court shall enter an order granting it relief from the automatic stay.  The Court's ruling is without prejudice to the assertion of any and all viable and meritorious claims that the Debtor has advanced in its adversary proceeding.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 26  2009
cc: Charles A. Dale, III, Esq., Gershon M. Gulko, Esq.

_____

Ross, Esq. as defendants and contains counts as follows: Count I (By Sunshine for Disallowance of Default Interest as a Penalty and Disallowance of Interest from September 1, 2005 through August 1, 2007 as a Penalty to Pine Banks); Count II (By Sunshine for Declaratory Judgment as to the Amount due Pine Banks); Count III (By Sunshine for Disallowance of Default Interest as a Penalty and Disallowance of Interest from January 2006 through August 1, 2007 as a Penalty to Wallace); Count IV (By Sunshine for Declaratory Judgment as to the Amount Due Wallace); Count V (By Sunshine for Subordination of the Wallace Claim Pursuant to Sec. 510(c) of the Bankruptcy Code); Count VI (By Sunshine for Damages from Unfair and Deceptive Acts and Practice as to Pine Banks); Count VII (By Sunshine for Damages for Unfair and Deceptive Acts and Practices by Wallace); Count VIII (Breach of Covenant of Good Faith and Fair Dealing as to Pine Banks, Wallace and Ross); and Count IX (By Sunshine for Unfair and Deceptive Acts and Practices by Ross).  Through its Complaint the Debtor sought disallowance of interest in the total sum of $281,688.48 with respect to the Pine Banks note and $103,194.06 as to the Wallace note.  Were the Court to rule in the Debtor's favor and reduce the amounts owed by $384,882.54, the Debtor's obligation to Pine Banks would exceed Pine Bank's appraised value of the property by $33,117.50.

27